ROBERT RANKIN & *als.*, *in review*, *versus* JOHN GODDARD.

The defendant sold to the plaintiffs in the Province of New Brunswick, 800 tons of timber to be delivered by a third person, and received his pay therefor. Subsequently, the plaintiffs sued the defendant in New Brunswick, for an alleged non-delivery of the timber, and, upon trial, recovered judgment for an amount equal to the original price paid for the timber. In the trial of an action subsequently commenced here by the defendant against the plaintiffs, for the price of the timber, the defendant offered to prove that 620 tons of the timber sold were delivered to the plaintiffs before the commencement of their foreign suit against him and 38 tons after the commencement, but before the trial of the same action; — *Held*, 1. That these facts should have been set up, the former in defence, and the latter in mitigation of damages in the foreign suit; and,

2. The foreign judgment having been rendered by a Court having juris-
diction of the parties and the subject matter, and not having been im-
peached, is conclusive here.

ON EXCEPTIONS.

On Dec. 20, 1855, the defendant, a citizen of this State,
at St. John, in the Province of New Brunswick, sold to the
plaintiffs, citizens of the latter place, 800 tons of merchant-
able white pine timber, to be delivered by one Josiah Ad-
ams, receiving therefor the plaintiffs' acceptance, for £1790,
on three months, which was duly paid at maturity.    The
timber not having been delivered according to the contract,
the plaintiffs, in August, 1856, at St. John, commenced an
action against the defendant in the Supreme Court of New
Brunswick, for damages for the non-delivery of the timber.
At the trial in June, 1858, the defendant personally appear-
ed and contested the suit upon the ground —

(1.) That the plaintiffs' claim for non-delivery was upon
Adams.

(2.) That the defendant was discharged for want of no-
tice within a reasonable time of the non-delivery ; but the
decision was adverse to him.

On April 4, 1861, the defendant sued the plaintiffs in
this county for the timber, recovered judgment Feb. 7,
1863, for $10,792 debt and $20,75 costs, and satisfied the
execution issued thereon by a levy on the real estate within
this State of the judgment debtors.

Subsequently, the plaintiffs petitioned this Court for a re-
view of the action, Goddard against them, which being
granted, they, on February 20, 1864, sued out this writ of
review.   At the October term, 1865, the case came up to
this Court on facts agreed, (54 Maine, 28,) whereupon it
was ordered to stand for trial.

At the Jan. term, 1868, before opening his case to the
jury, Goddard, the original plaintiff, by leave, amended the
original writ, by changing the date from Dec., 1855, to Dec.,
1856, when 38 tons of the timber was alleged to have been
delivered to the plaintiffs in review.    Thereupon Goddard

offered to prove, *inter alia*, that, in 1856 and 7, he delivered into the actual possession of the plaintiffs in review 658 tons of the timber sought to be recovered, 38 tons of which were delivered after the commencment but before the trial of the suit against him in New Brunswick. The presiding Judge ordered a nonsuit, and the defendant alleged exceptions.

*N. Webb*, for the defendant.

*Geo. F. Shepley and A. A. Strout, and Wm. McCrillis*, for the plaintiffs.

DANFORTH, J. — This action. has once been before this Court, and is reported in 54 Maine, 28. It was then decided that the judgment between these parties, rendered by the Supreme Court of New Brunswick, is not conclusive in this State, but that the jurisdiction of the Court might be inquired into, or the judgment impeached for fraud, and, for that purpose, the action was ordered to stand for trial. It now comes before us upon the evidence of the original plaintiff, the presiding Judge having ordered a nonsuit. It is not now pretended that the Court rendering that judgment had not jurisdiction both of the subject matter and of the parties, and a careful examination of the testimony fails to reveal anything, even tending to prove fraud. That judgment, therefore, stands unimpeached.

But it is now contended that the nonsuit was improperly ordered, because it was found that 658 tons. of the timber sued for, was actually received by the original defendants, and it was a question for the jury, whether it was delivered before or after the date of the writ in New Brunswick, and that 38 tons of it were certainly delivered after the date of that writ. It will be found, from an examination of the testimony, that the 620 tons were delivered before commencement of the suit, and the 38 tons before the trial. It further appears that, not only the 620 tons, but the 38, were delivered in fulfilment of the contract of sale evidenced by the

acceptance of Dec. 19, 1855. This was, so far as appears, the only sale of timber from Goddard to Rankin & Co. Goddard himself states that this 658 tons were delivered and received " towards the 800 tons for which his acceptance was given, which I sold Rankin & Co." Now, all this timber, for which the acceptance was given, has been once paid for, and no reason is suggested why he should recover for it again.

Besides, the action in New Brunswick was for damages for the non-delivery of the timber, under that contract. The 38 tons having been delivered and received in part fulfilment of that contract before the trial, it was competent for the defendant to prove it in mitigation of damages, equally so as if delivered before the suit was · commenced ; and, if he neglected to avail himself of that, he has lost his remedy. There is no ground on which an implied promise to pay can rest. If, therefore, we view this action as one to recover pay for lumber delivered under the acceptance, it must fail, for payment has been made. If we consider the amendments proposed, as adopted, then, as an action to recover back the money paid under the foreign judgment, it must fail, for that judgment is unimpeached.

*Nonsuit confirmed.*

KENT, WALTON, DICKERSON and BARROWS, JJ., concurred.